BOLAND, Respondent, vs. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

*January 14—February 9, 1915.*

*Carriers: Injury to horses: Exposure: Negligence in spotting car: Cause of injury: Evidence: Sufficiency.*

1. In an action for injury to horses alleged to have been caused by defendant's negligent delay in spotting the car in which they had been carried so that they could be unloaded, it appearing that after the car arrived at its destination plaintiff's employees in charge thereof, knowing that the horses were sweating and that the car could not be spotted for several hours, went away leaving the side doors of the car partly open, and that when they returned the horses were cold and shivering, it is *held* that, even assuming that defendant was negligent in delaying to spot the car, the jury was not warranted in finding that such negligence was the proximate cause of the injury.
2. The evidence in such case is *held* insufficient, also, to warrant a finding that the death of one horse and the foundered condition of another was caused by exposure in the car.

APPEAL from a judgment of the circuit court for Ashland county: G. N. RISJORD, Circuit Judge. *Reversed.*

This is an action to recover damages for the death of one horse and injury to another, alleged to be due to the negligence of the defendant in preventing the unloading of a shipment of horses by plaintiff within a reasonable time after their arrival at their destination.

The plaintiff shipped a carload of eight horses from Rhinelander to Antigo over the defendant's road. The plaintiff sent two men with the car to look after the horses. The horses were shipped in a train which was to leave Rhinelander about 7:30 o'clock p. m. and was to arrive at Antigo about 11:15 p. m.

In making this shipment the small square door in the rear or north end of the car was left open and the side doors were also cleated open a foot or a foot and a half. When the train arrived at Monico Junction, fourteen miles from Antigo, Leith, one of the men in charge, examined the horses and they were found to be pretty well heated up, that is, sweating. Leith and his companion place the time of arrival at Antigo between 11 and 12 o'clock. The exact time of arrival was shown to be at 11:15 p. m. The train inspectors took charge of the train of cars and placed a blue light on the front end of the train to indicate the train was undergoing inspection for safety devices under the federal law. According to regulations and rules the train cannot be broken up until such inspection is completed. It took from forty to forty-five minutes to inspect the train. Leith testified that the horses were heated and sweating when they arrived at Antigo. Soon after the arrival he spoke to a person, whom he believed to be the yardmaster, and requested that the car be spotted as soon as possible, and was informed that it could not be spotted until a passenger train had pulled through, which was due at 2:35 a. m. This train did not arrive until 3:09 a. m. Leith and his helper went down town and had lunch, and upon returning they found the horses were cold and shivering and shaking. They then shut the side doors and Leith remained in the car with them. The car was spotted at 3:30 a. m. The horses were unloaded between 5 and 6 o'clock that morning. The weather conditions of the night were shown to be cooler after midnight, but the thermometer did not fall to the point of freezing. It appears that after the horses were unloaded

and put in a barn one horse, called "Doc," was noticed to be unwell. Dr. Ross, who examined the horse, testified that he was called in to look at this horse about 11:15 that morning; that he found him in a condition of colic; that colic often results from excitement and immediate feeding, and that the symptoms this horse showed might develop into pneumonia. Another horse, called "Bob," alleged to have been foundered, was not seen by Dr. Ross. He testified, however, that if a horse had been sweating and then suddenly cooled off and shivered, it very probably would develop into a case of founder almost immediately.

The jury found in substance that the death of the horse "Doc" was caused by exposure after the arrival of the car in Antigo and before unloading, and that the stiffened condition of the horse "Bob" was caused by like exposure; that the employees of the plaintiff did request the switch foreman, fifteen minutes after arrival, to spot the car; that the car was not spotted within a reasonable time; that this failure was the proximate cause of the death of the horse "Doc" and the foundered condition of the horse "Bob;" that plaintiff's servants were not guilty of any want of ordinary care that proximately contributed to the death and foundered condition of these horses; that there was no stock contract entered into; and assessed the value of the dead horse and the damage by founder to the other. The court awarded judgment for the recovery of these sums in plaintiff's favor. From such judgment this appeal is taken.

*Edward M. Smart,* for the appellant.

For the respondent there was a brief by *McCloud & Pierrelee,* and oral argument by *Victor T. Pierrelee.*

SIEBECKER, J. The defendant assigns error upon the action of the trial court holding that the evidence sustains the finding of defendant's negligence, as alleged, by the jury, and that the evidence permitted an inference that if defendant

was negligent as charged such negligence was the proximate cause of the alleged damage to the plaintiff's horses. We are of the opinion that the court erred in holding that there is evidence in the case tending to show that the alleged negligence of defendant's servants in unreasonably delaying spotting of the car with plaintiff's horses, after its arrival at Antigo at 11:15 o'clock p. m. on the day in question, was the proximate cause of the injury and damage to plaintiff's horses. It appears that when the train reached Antigo at 11:15 o'clock in the night the men in charge of the horses requested the foreman of the switch engine to have the car spotted immediately; that he informed them that the car could not be spotted until after the next passenger train had passed, which would be sometime between 1 and 2 o'clock; that these men then made further effort to have the car spotted immediately, but did not succeed; that they left the yards to get a lunch, and on returning about one hour and a half after the train had arrived they again made request at the ticket office to have the car spotted and were directed to see another in charge of this operation; that their further effort in this regard failed; that they went to the car and found that the horses had become cold and were shivering and then closed the side doors of the car, which had been open on both sides about from a foot to a foot and a half. One of them remained in the car with the horses until morning, when they were unloaded between 5 and 6 o'clock. The car was spotted about half past 3 o'clock, the passenger train passing at nine minutes after 3 o'clock. Assuming as a verity the finding of the jury that defendant's servants negligently delayed the spotting of the car, the inquiry is, Does the evidence show with reasonable distinctness that such delay in spotting the car proximately caused the injury to plaintiff's horses? The evidence shows that the defendant performed its duty in having all trains from the north stop for inspection required under the federal law. Any train, while under inspection, is not to be broken up. It re-

quired from forty to forty-five minutes to inspect this train. The caretakers of the plaintiff's horses testify that they left the side doors of the car open when they left it to get a lunch and that the horses were cold and shivering when they returned after lunch, when they closed the doors. Common knowledge suggests and the opinion evidence in the record accords with the fact that if plaintiff's horses suffered from exposure on this trip it probably occurred within the time from the arrival at Antigo and the time the caretakers returned to the car after lunch while the car stood in the yards with the side doors open. The caretakers had been told that the car would not be spotted until the next passenger had passed, sometime between 1 and 2 o'clock. The fact that defendant's servants unjustifiably delayed spotting the car did not relieve the caretakers from performing their duties with reasonable care, and required of them, under the circumstances and notice of such delay before the car would be spotted, to protect the horses from exposure from a change in temperature, so far as within their power. Admittedly they omitted closing the side doors, which obviously was the main cause in exposing the horses to the changed conditions of temperature and produced the cold and shivering condition of the horses which the caretakers noticed when they returned from lunch. It would be mere speculation and conjecture to attempt to differentiate in what degrees the delay of spotting the car and the conduct of the caretakers in exposing the horses to the coldness of the night by leaving the doors of the car open contributed to produce injuries to plaintiff's horses of the nature here complained of. Under the state of the evidence the plaintiff has not established with reasonable distinctness that defendant's negligence was the proximate cause of the injuries complained of. The evidence leaves an answer to this question in the realms of conjecture and the jury's findings upon the subject are not supported by facts warranting such inference with any reasonable certainty.

The evidence is also insufficient to sustain this finding of the jury on another phase of the case, namely, that the death of one horse and the foundered condition of the other were caused by exposure after their arrival in Antigo before they were unloaded from the car. The caretakers' bare assertion that the horses took cold in the car is wholly unsupported by the facts and circumstances or expert knowledge on their part to show that they knew this fact. So far as the record shows it was a mere guess on their part. The evidence of other witnesses concerning the probable cause of the sick condition of these horses on the day after their arrival at Antigo leaves the matter in such doubt that no person can tell with any reasonable probability that their condition was caused by exposure in the car. The record is devoid of any evidentiary facts, or of opinions of the experts based on the facts in evidence, showing that exposure of the horses caused their sickness, and hence there is no evidence which reasonably permitted the jury to find that exposure on the trip caused the horses to become sick. The record shows that the ailments of these horses may have been due to causes wholly unconnected with defendant's action in delaying spotting of this car. Under such a state of the case it is mere speculation to attribute their condition to the defendant's negligence. The court erred in submitting these issues to the jury. The defendant was entitled to judgment dismissing plaintiff's complaint.

*By the Court.*—The judgment appealed from is reversed, and the cause remanded with direction to enter judgment dismissing plaintiff's complaint.

BARNES, J., took no part.