APPLICATION OF GEHRKE and wife: WISCONSIN RIVER POWER COMPANY, Appellant.

*February 10—March 14, 1922.*

*Eminent domain: Damage to landowner by construction of dam: Alternative causes of damage: Excessive rainfall: Disposition of case.*

In proceedings by landowners to appraise the damages accruing from the construction of a dam which it is claimed caused a raising of the ground level of the water on their land, where there was evidence that the condition of the petitioners' lands might have resulted from excessive rainfall as well as from the construction of the dam, an order appointing commissioners to appraise the damages will be reversed, with instructions to dismiss the petition without prejudice to petitioners' right to institute new proceedings if within the period of the statute of limitations the lands remained in a wet condition during a continued period of normal rainfall.

APPEAL from an order of the county court of Sauk county: JAMES H. HILL, Judge. *Reversed.*

The appeal is from an order appointing commissioners in condemnation proceedings.

*E. J. B. Schubring* of Madison, for the appellant.

For the respondents there was a brief by *Grotophorst & Quale* of Baraboo and *H. H. Thomas* of Madison, and oral argument by *Mr. Thomas.*

OWEN, J. The appellant owns and maintains a dam for the purpose of generating electric power, which dam extends across the Wisconsin river about a mile north of the village of Prairie du Sac. The construction of this dam was commenced in 1910. In 1913 it raised the water five feet; in 1914 about twenty-five feet; in 1915 the water was raised another three feet; in the latter part of 1915 or 1916 it was raised another foot, and in the winter of 1918, or the spring of 1919, it was raised to its present height, so that the total height is now about thirty-three feet.

Petitioners' lands are located in a valley which drains into the Wisconsin river, the general direction of which is north from the river and about a half mile from the pond created by the dam. The petitioners, who claim damage to their lands by reason of the construction of the dam, instituted these proceedings in the nature of condemnation to have the damage appraised. The petition alleges that

"Although the waters of the mill-pond do not border directly upon the lands of your petitioners, the raising of the water in the mill-pond has raised the water level and has interfered with the natural surface and underground drainage of petitioners' lands, and the water having been set back thereon, petitioners' lands, as a result, have become wet and soggy and unfit for use. That as a result of raising the water level in the vicinity of said mill-pond near the lands of petitioners, the underground drainage is impaired and petitioners' lands . . . have been rendered wet and soggy and unfit for use, whereas prior to the con-

struction of said dam and in the ordinary course of nature said lands were naturally drained and were capable of, and were used for, agricultural purposes."

The evidence shows that up to the year 1915 petitioners' lands were dry and suitable for agricultural purposes; that during the period from 1915 down to the time of the hearing the lands were wet and soggy, rendering them entirely unfit for agricultural purposes; that this was the condition of the lands during that period is not a matter of dispute. The controversy is as to the reason for the wet condition of the lands.

On the part of the petitioners it is argued that as the lands were dry and tillable prior to the construction of the dam, and their wet and untillable condition has arisen since its construction, the raising of the water by the dam, thus preventing the underground drainage down through the valley to the river, is the cause of their present condition. The defendant introduced evidence to show that below petitioners' lands an impervious bank of clay, more than thirty feet in depth, extends clear across the valley, which bank is so impervious as to shut off from petitioners' lands the water from the dam; that this clay bank extended below the water level before the dam was put in, and that as the drainage from the upper part of the valley could not percolate through this clay bank it necessarily went under it, and as this was below the water level prior to the raising of the dam, the raising of the dam had no effect upon the underground drainage of the upper part of the valley. Drainage experts testified that because of this fact the ground water curve, instead of being a gradual rise and extending back probably several hundred feet, as would be the case with sand, extends back but a short distance and rises abruptly to the surface. The defendant also claims that the wet condition of petitioners' lands is due to abnormal rainfall and not to an interference caused by its dam with the normal drainage from this valley.

The evidence showed that the mean annual rainfall for this territory from 1895 to 1910 was twenty-eight inches; from 1889 to 1917 it was thirty and seven-tenths inches; from 1911 to 1917 it was thirty-five and three-tenths inches; and from 1911 to 1919 it was thirty-four and two-tenths inches. These statistics show an abnormal rainfall for that region coincident with the beginning of the construction of the dam, and, without undertaking to enter into a detailed discussion of the evidence, we will content ourselves by saying that it is obvious that the condition of petitioners' lands might have resulted either from the interference with drainage by the construction of, and consequent raising of the water by, the dam, or it might have resulted from the excessive rainfall, and that at the time of the trial, based upon the evidence then at hand, a conclusion that the condition resulted from one or the other cause was no more than a mere guess or conjecture. If the ground level of the water in petitioners' lands is due to the construction and maintenance of appellant's dam, then petitioners are entitled to damages. But the unfortunate situation for the petitioners is that coincident with the building of the dam an abnormal rainfall set in which persisted down to the trial of the case; and while theorists may easily convince themselves that the condition of the lands is due to one or the other of these causes, the real cause cannot be established with any degree of certainty. This case reminds the writer of *Dickson v. Pritchard*, 111 Wis. 310, 87 N. W. 292, in which the court said:

"Plaintiffs' case, as to this feature of it, was based entirely upon theory, speculation, and conjecture. It was their misfortune that definite testimony could not be procured. Recoveries cannot be allowed that have no other basis than mere speculation or conjecture. . . . The testimony in this regard is so speculative and conjectural that we are not able to see how, if a verdict had been rendered for the plaintiffs, it should have had any substantial basis to rest upon."

It is well settled that "where the proof discloses that a given result may have occurred by reason of more than one proximate cause, and that a jury can do no more than guess or conjecture as to which was in fact the efficient cause, the submission of such a choice to the jury has been consistently condemned by this court." *Matuschka v. Murphy,* 173 Wis. 484, 488, 180 N. W. 821, and cases there cited. See, also, *Hyer v. Janesville,* 101 Wis. 371, 77 N. W. 729.

The conclusion of the trial court, therefore, that the condition of petitioners' lands was the result of the construction of the dam, cannot be sustained. It occurs to us, however, that if the lands should remain in their wet condition during a continued period of normal rainfall, the deduction might be justified that their wetness was due to the construction and maintenance of the dam. We feel that should this appear at any time prior to the running of the statute of limitations the petitioners should be allowed to institute new proceedings for the appraisement of their damages, and we will therefore reverse the order appealed from, with instructions to dismiss the petition, but without prejudice to the right of petitioners to re-institute proceedings at any time within the bar of the statute of limitations.

*By the Court.*—So ordered.