CHAIMSON, Respondent, vs. AMERICAN RAILWAY EXPRESS COMPANY, Appellant.

*June 9—October 10, 1922.*

*Carriers: Shipment of horses: Negligence: Horse killed in car: Burden of proof: Contributory negligence: Shipper accompanying horses: Limitation of liability: Evidence: Verdict.*

1. The fact that a shipper of horses was given free transportation for the express purpose of caring for the horses and relieving the carrier of the duties which would otherwise have rested on it did not relieve the carrier from the obligation to use reasonable care; and it was competent for the parties to stipulate that the shipper would see that all doors and openings were so fastened and closed as to prevent escape of or injury to animals.

2. A carrier may contract that it will not be liable for injuries caused only by the propensities of the animals themselves.

3. There is no presumption of the negligence of a carrier as to stock not in its exclusive charge. Where a shipper accompanying the stock had the same or better means of knowledge of its condition than the carrier, the burden is on him to prove negligence on the part of the carrier, and if the negligence of the shipper contributed to the injury he cannot recover.

4. The mere fact that one of the horses died during transit or was killed by the other horses does not create liability on the part of the carrier.

5. The evidence in this case is *held* insufficient to show that one of the horses was knocked down and trampled to death by the others, or that, if the shipper had been able to open the car door, he could have saved it.

6. Verdicts must have a more substantial basis than mere speculation or conjecture.

7. The limitation by contract of a carrier's liability is not forbidden by the Carmack and Cummins amendments to the Interstate Commerce Act (38 U. S. Stats. at Large, 1196, 1197, ch. 176, and 39 id. 441, ch. 301), it not being the purpose of the statutes to make common carriers absolute insurers.

APPEAL from a judgment of the circuit court for Shawano county: EDGAR V. WERNER, Circuit Judge. *Reversed.*

Action to recover the value of a horse alleged to have been trampled to death by other horses in a car shipped from Decorah, Iowa, to Shawano, Wisconsin. The complaint alleged that by reason of the negligence of defendant in hooking from the inside three of the four doors of the car in which the horses were shipped, plaintiff was unable to get into the car and save the horse; and that the conductor, when he heard a noise in the car and notified plaintiff, failed to stop the train and give plaintiff opportunity to enter the car or protect the horses.

The answer alleged that the doors were fastened in the presence and to the satisfaction of the plaintiff; that the death of the horse was the result of the inherent nature of the animals; and denied that the plaintiff requested the conductor to stop the train in order that the horses might be inspected. Further answering, defendant set up the terms of the contract between the parties limiting liability.

The car in which the horses were shipped was divided into three compartments and had two doors on each side. Plaintiff was present when the animals were loaded. It was customary to hook one door on each side on the inside and fasten the others on the outside, and defendant's agent testified that this was done with the car in question.

At Milwaukee plaintiff and his agent looked into the windows of the car but did not attempt to enter. The conductor testified that shortly before the train reached Sheboygan he told plaintiff that he had heard a commotion in the car; that plaintiff later told him that he had got into the car, looked at the horses, and found them to be all right. Plaintiff testified that he was told of the commotion in the vicinity of Manitowoc; that at the next stop he attempted to enter the car and could not because the doors were fastened on the inside; that at another stop he used a sledge hammer and got one door partly open, when the train started; that when he reached Shawano he found that one of the horses had fallen down and had been trampled to death, and that three of the doors were hooked on the inside.

Plaintiff testified that he told the conductor he could not get into the car and that the conductor advised him to get a pinch-bar at the next stop. This was denied by the conductor, the substance of his testimony being that he notified plaintiff of the commotion and later was told that the horses were all right; that he would have stopped the train if he had been asked to do so, but that no such request was made; and that he left the train at Manitowoc.

The contract of shipment provided, in part:

"Section 5. Where said animals are accompanied by the owner, or an attendant in his employ, the following further conditions shall apply, viz.: the shipper agrees to load, transship and unload said animals at his own risk, the *Express Company* furnishing the necessary laborers to assist. The shipper shall take care of, feed and water said animals while being forwarded or transported, whether delayed in transit or otherwise, and the *Express Company* shall not be under any liability or duty with reference thereto except in the actual forwarding thereof. The shipper further undertakes to see that all doors and openings in the cars in which said animals are shipped are at all times so closed and fastened as to prevent the escape of any of said animals or injury thereto, and the *Express Company* shall not be liable

on account of the escape of any of said animals or any injury thereto resulting from open doors or defective ventilation."

The contract also provided:

"The shipper agrees that the *Express Company* shall not be liable for the conduct or acts of the animals to themselves, or to each other, such as biting, kicking, goring, or smothering, nor for loss or damage arising from the condition of the animals themselves, or which results from their nature or propensities, which risks are assumed by the shipper. The shipper hereby releases and discharges the *Express Company* from all liability for delay, injuries to or loss of said animals and paraphernalia, from any cause whatever, unless such delay, injury, or loss shall be caused by the *Express Company* or by the negligence of its agent or employees."

The jury found that defendant was guilty of a want of care in locking the doors in the manner in which they were locked when the horse was shipped; that such want of care was the proximate cause of the death of the horse; and that the damages suffered amounted to $275. Judgment was entered accordingly.

The cause was submitted for the appellant on the brief of *Eberlein & Larson* of Shawano, and for the respondent on that of *R. J. Winter* of Shawano.

The following opinion was filed July 8, 1922:

JONES, J. The plaintiff and his agent were given free transportation for the express purposes of caring for the horses and relieving the carrier of some of the duties which would otherwise have rested upon it. It is true this did not relieve the company from the obligation to use reasonable care. But it was competent for the parties to make the stipulation that plaintiff would see that all doors and openings were so fastened and closed as to prevent the escape of the animals or injury to them, and it is clear from the

evidence that he utterly disregarded this term of the contract.

He was an experienced shipper and had been engaged in shipping horses over the same route for about five years, and of course knew, or ought to have known, the proper and usual mode of fastening the doors in the cars used for shipment. He testified that he paid no attention to the manner in which the doors were locked; that it was none of his business; and that he did not look at the doors on the route until he was told that there was some noise in the car.

It is argued by plaintiff's counsel that when noise was heard in the car it was the duty of the conductor to hold the train until the doors could be opened and an examination made. Plaintiff testified that it was not uncommon to hear noises in a car. Although he was informed of the noise he made no request that the train be held. The testimony was that in the shipment of horses, if there was any trouble the train was always held, if so requested, until there was a thorough inspection and the difficulty remedied.

A large number of horses cannot be transported several hundred miles in a railroad car without considerable danger of injury to some of them. They are likely to be frightened by the rapid movement of the train, the noises and other unusual conditions to which they are subjected, and in their fright to suffer injuries which cannot be foreseen. Under such circumstances it is reasonable that there should be some limitations on liability. There is no doubt but the company had the right to contract that it should not be liable for injuries caused only by the propensities of the animals themselves. *Betts v. Farmers' L. & T. Co.* 21 Wis. 80. See note, Am. & Eng. Ann. Cas. 1913D, 972. Indeed it has often been held that no contract limiting liability is necessary in such cases to protect the carrier. *Boehl v. C., M. & St. P. R. Co.* 44 Minn. 191, 46 N. W. 332; 1 Hutchinson, Carriers (3d ed.) secs. 335, 336, and cases cited.

"Animals may injure or destroy themselves or each other; they may die from fright or from starvation, or they may die from heat or cold. In all cases, therefore, where injuries occur by reason of the inherent vices or natural propensities of the animals themselves, the carrier is relieved from responsibility if he can show that he has provided all suitable means of transportation, and exercised that degree of care which the nature of the property requires." 1 Hutchinson, Carriers (3d ed.) sec. 336.

There was no presumption of negligence on the part of the defendant for the reason, if no other, that the stock was not at any time in the exclusive charge of the carrier. Where the shipper accompanies the stock and has the same means of knowledge as the carrier of the condition of the stock, or better means of knowledge, the burden rests upon him to prove the negligence causing the injury, and if his own negligence has contributed he cannot recover. *Zimmerman v. N. P. R. Co.* 140 Minn. 212, 167 N. W. 546; *McManus v. C. G. W. R. Co.* 138 Iowa, 150, 115 N. W. 919; 5 Thompson, Comm. on Neg. (2d ed.) § 6586 and cases cited.

In the instant case there was no unnecessary delay in transporting the stock. There was no proof of any collision or violent switching which could have contributed to the injury. If there was any negligence in the manner in which the doors were fastened, or in which the fastenings were maintained on the journey, the plaintiff was at least equally negligent with the defendant.

There is another very serious obstacle to a recovery in this case. The mere fact that the horse died on the route or that it was killed by the other horses does not create liability on the part of the carrier under the circumstances of this case. There was no sufficient proof that the horse was knocked down and trampled to death by the other horses, or that if the plaintiff had been able to open the door in question at Manitowoc or Sheboygan he could have saved the animal. The questions when,

where and how the injury occurred were all left to speculation. The language of Mr. Justice SIEBECKER in the opinion in *Boland v. C. & N. W. R. Co.* 159 Wis. 609, 613, 150 N. W. 967, is quite pertinent to the facts in this case. It was there stated:

"Under the state of the evidence the plaintiff has not established with reasonable distinctness that defendant's negligence was the proximate cause of the injuries complained of. The evidence leaves an answer to this question in the realms of conjecture, and the jury's findings upon the subject are not supported by facts warranting such inference with any reasonable certainty."

Verdicts must have a more substantial basis than mere speculation or conjecture. *Hyer v. Janesville,* 101 Wis. 371, 77 N. W. 729; *Klein v. Beeten,* 169 Wis. 385, 172 N. W. 736; *Application of Gehrke,* 176 Wis. 452, 186 N. W. 1020; *Matuschka v. Murphy,* 173 Wis. 484, 180 N. W. 821; *Musbach v. Wis. C. Co.* 108 Wis. 57, 84 N. W. 36; *Quass v. Milwaukee G. L. Co.* 168 Wis. 575, 170 N. W. 942.

The claim is made by plaintiff's counsel that the provisions in the shipping contract as to limiting liability are all inoperative since the passage of the Carmack and Cummins amendments to the Interstate Commerce Act (38 U. S. Stats. at Large, 1196, 1197, ch. 176, and 39 U. S. Stats. at Large, 441, ch. 301). It was clearly not the purpose of these statutes to make common carriers absolute insurers. In construing the Carmack amendment Mr. Justice LURTON said:

"The suggestion that an absolute liability exists for every loss, damage, or injury, from any and every cause, would be to make such a carrier an absolute insurer and liable for unavoidable loss or damage though due to uncontrollable forces. That this was the intent of Congress is not conceivable. To give such emphasis to the words 'any loss or damage' would be to ignore the qualifying words 'caused by it.' The liability thus imposed is limited

to 'any loss, injury, or damage caused by it or a succeeding carrier to whom the property may be delivered,' and plainly implies a liability for some default in its common-law duty as a common carrier." *Adams Exp. Co. v. Croninger,* 226 U. S. 491, 506, 33 Sup. Ct. 148.

The object of the legislation was to supersede the special regulations and policies of particular states upon the subject of the carriers' liability to shippers for loss or damage to interstate shipments, and the contracts of carriers with respect thereto.

There are many federal decisions construing these acts. Most of them relate to the amount of the liability or to the question of liability as between the shipper and the initial and connecting carriers. None of them holds that the carrier is absolutely liable for every loss.

*By the Court.*—Judgment reversed.

On October 10, 1922, the mandate of this court was amended to read as follows:

Judgment reversed, with costs, and cause remanded with directions to dismiss plaintiff's complaint upon the merits.