ZBLEWSKI, Respondent, vs. JACKSON MILLING COMPANY and others, Appellants.

*May 3—June 18, 1923.*

*Waters: Raising height of dam: Flooding property: Damages: Liability.*

1. The evidence in this case is *held* to disclose a situation from which the jury might draw a reasonable inference that the plaintiff's cellar and garden were flooded because of raising the height of defendants' dam.
2. The defendants were liable for the damages sustained by the plaintiff, in the absence of a showing by them of the lessening of the liability that follows from the erection and maintenance of the dam, under the general law as embodied in secs. 1777 and 1777e, Stats.

APPEAL from a judgment of the circuit court for Portage county: BYRON B. PARK, Circuit Judge. *Affirmed.*

The plaintiff owns a lot with a dwelling in the city of Stevens Point fronting to the north on Portage street and near Sawdust street to the south and west. The Wisconsin river runs through the city, and defendants, owning a dam in said river below plaintiff's property, completed, under permission from the railroad commission, about February, 1919, an added height to it of about six and one-half feet so that thereafter the water level was continuously kept at

a height designated as 102.5 and was maintained there by automatic gates, except that at times of flood the gates were so controlled as to reduce the height to avert danger.

Above the dam and to the south and east of plaintiff's premises was a slough or arm of, and running to the north and east from, the river. Plaintiff's premises are 690 feet easterly from the river and about 600 feet northwesterly from the slough. In 1920 the defendant built a cement wall across the mouth of the slough, going down some feet below water level, and about 200 feet in length, and running from one sand knoll to another. The north end (being 475 feet from the river) terminated about 100 to 150 feet beyond the slough, and the south end (125 feet from the river) extended about seventy-five feet beyond it. A pump was maintained at this wall and was used to empty the water from the slough so as to maintain the water level there at a point lower than that in the dam.

Plaintiff claimed damages in this action, commenced April, 1921, on the ground that by this raising of the water level plaintiff's land has been overflowed for the greater part of the time since February, 1919, thereby preventing the use of the lot for garden purposes and causing a flooding of the basement of the house and consequent injury to the same.

The defendants joined in an answer admitting the plaintiff's ownership of her lands and by certain of the defendants of the said dam; and further, "that said defendant Oneida Power Company is legally liable for all and any damages caused thereby during the year 1919 or thereafter;" concluding with a general denial.

A view of the premises and the surrounding territory was had and a great amount of testimony taken on the trial in May, 1922.

Two questions by special verdict were submitted and answered as follows:

(1) Plaintiff's cellar and garden were flooded by the defendants' dam from February, 1919, to April, 1921.

Zblewski v. Jackson Milling Co. 181 Wis. 233.

(2) The plaintiff sustained damage by reason of the flooding of her premises during the time mentioned in question (1) as follows: (a) to the house, $25; (b) to the garden, $50.

Upon motions made by the respective parties after verdict the court ordered judgment in favor of the plaintiff for the amount of the verdict. In disposing of such motions the court said, among other things:

"There are many people, I am led to believe, similarly situated who either have brought or contemplate bringing similar actions.

"There is unquestionably underground drainage from the north down to the slough. There is also drainage through Moses creek of a large area easterly from the slough. There is also, it seems to me, some evidence that the proximate cause of the damage is water from the defendants' dam.

"If, as defendants claim, the evidence amounts to a demonstration that the water which damages the plaintiff is not from the Wisconsin river, it would amount to such in all similar cases.

"There is only one way to end a multiplicity of suits, and that is to ask the appellate court to review the evidence. I wish it distinctly understood that I have considerable doubt in the matter.

"I am, however, going to give the plaintiff the benefit of the doubt and order judgment on the verdict for damages found by the jury and the costs of the action."

From the judgment the defendants appeal.

For the appellants there was a brief by *Goggins, Brazeau & Goggins* of Wisconsin Rapids, and oral argument by *Theo. W. Brazeau.*

For the respondent there was a brief signed by *J. R. Pfiffner,* and oral argument by *Mr. Pfiffner* and *Mr. W. E. Atwell,* both of Stevens Point.

ESCHWEILER, J. It is confidently asserted by appellants that the testimony demonstrates that the water found standing in the basement and garden at plaintiff's premises is either the result of underground drainage coming through

the territory north and east, or else that such situation is caused by the checking of such underground drainage by reason of the increased level in the subterranean waters in the soil between plaintiff's premises and the Wisconsin river, and for which such result they claim there is no legal liability on their part. It is further contended that in any event the result reached by the jury in their answer to the first question of the verdict is so entirely a matter of speculation or conjecture that no judgment in plaintiff's favor can find proper justification, and that the situation in that respect is similar to and is controlled in their favor by the holding in *Application of Gehrke,* 176 Wis. 452, 186 N. W. 1020.

A great amount of testimony was taken as to the nature of the surface and subsoil at and surrounding plaintiff's premises and to a considerable distance north and east. Levels were taken as to the height of the water found to stand in borings made in the territory, and, because the height of such underground waters was higher than that maintained at the dam, defendants claim that it necessarily follows that the results on plaintiff's premises could not be chargeable to the level maintained by defendants by the increased height of the dam. That there is natural drainage from north and east of plaintiff's premises for a considerable extent of territory through the soil itself and by small watercourses or drains into the slough, rather than first into the Wisconsin river, is demonstrated. The testimony also shows that during the latter part of the time in question the water in the slough had been kept, by means of pumping, at a lower level than the water in the dam, and that there was a close connection between any raising of the height of the water in the slough with any increase in rainfall, thereby indicating that there was very little and but slow, if any at all, seepage or underground passage of water from the dam into the slough similar to that which, under plaintiff's theory, kept the water on her premises at the additional height of

which she complains; defendants claiming that this fact shows that there can be no seepage from the river to plaintiff's premises still more distant than is the slough.

From the record here presented, however, we think there is a situation disclosed from which a reasonable inference may be drawn in support of the jury's findings. The fact that property to the north and east of plaintiff's lot is undoubtedly affected by the underground drainage from the north and east more than from seepage from the river is not at all conclusive that the result on plaintiff's premises was from the same cause because the conditions are not all the same.

Plaintiff's lot was situated on a small sandy knoll at what might be considered the peak of a water-shed with natural drainage both to the east away from and to the west towards the river. Between this lot and the river was land filled up with material, permitting possible seepage through to this lot. There is testimony to support a finding that a long continued standing of the water on plaintiff's premises during times other than at flood periods was subsequent to the raising of the height of the dam. The inference that it is consequent as well as subsequent is legitimate and permissible. We consider the facts here to be so substantially different from those presented in the decision upon which defendants strongly rely, of *Application of Gehrke,* 176 Wis. 452, 186 N. W. 1020, *supra,* that such decision is not applicable here.

The questions of fact being thus disposed of, we see no escape from the conclusion that defendants were properly held responsible for the consequent damages under the ruling in *Wells v. Wis. River P. Co.* 167 Wis. 345, 167 N. W. 445, rather than as being within the field of the law presented in the case of *Huber v. Merkel,* 117 Wis. 355, 94 N. W. 354, and kindred cases here called to our attention. No showing is made in this case, either by original charter or by any special acts of the legislature with reference to

the construction or maintenance of this dam on the navigable Wisconsin river, that there is any restriction upon or lessening of the liability that follows from the erection and maintenance of such a structure under the general law as embodied in secs. 1777 and 1777e, Stats., the subject of consideration and decision in the case of *Wells v. Wis. River P. Co., supra.*

*By the Court.*—Judgment affirmed.