JOHNSON, Appellant, vs. S. W. STRAUS & COMPANY, Respondent.

*December 8, 1930—January 13, 1931.*

For the appellant there was a brief by *McGovern, Curtis, Devos & Reiss* of Milwaukee, and oral argument by *Francis E. McGovern.*

For the respondent there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Kenneth P. Grubb* of counsel, all of Milwaukee, and oral argument by *Mr. Grubb.*

WICKHEM, J.   For some years plaintiff had been in the habit of depositing small sums in a savings account with the defendant.   When the amount of the fund reached $500 she would customarily purchase a bond from defendant.   A short time prior to November 25, 1925, plaintiff told a representative of the defendant that she had some stock which she wished to sell and invest the proceeds in bonds.

On November 25, 1925, about one o'clock in the afternoon, following some conversation earlier in the day, in which defendant agreed to take care of the sale without brokerage charge provided she invested the proceeds in bonds sold by the defendant, plaintiff delivered the certificates to an agent of the defendant, receiving in return the following paper:

"Milwaukee, Nov. 25, 1925.
"Received from Miss Tunie C. Johnson 140 shares Class B stock of The Federal Finance Corp    Dollars    To be sold at best 18 or better.        S. W. STRAUS & Co.
"By L. E. Clark."

The stock referred to was listed on the New York Curb. On November 27th defendant gave an order to sell the stock to A. B. Leach & Company, Chicago, who were not members of the New York Stock Exchange or the New York Curb.   On November 30th Leach & Company gave the order to sell the stock to Paul H. Davis & Company, Chicago, who are members of the Stock Exchange.   The Davis Company telegraphed the order on the same day to Hornblower & Weeks, New York, who confirmed the order on December 1st.

It was contended by the plaintiff, and found by the jury, that the defendant failed to exercise proper diligence in getting the stock to the New York Curb for sale, and the plaintiff assigns as error the court's order setting aside the jury's finding in this respect.

In the view the court takes of this case it is not deemed necessary to discuss the question whether defendant failed to exercise due diligence in offering plaintiff's stock for sale.   Assuming that it did, it is considered that plaintiff cannot recover.

The memorandum of agreement provided for sale at 18 or better.   While this memorandum may not have been intended by the parties as a complete integration of their negotiations, it must, to the extent that it was intended to

integrate these negotiations, be held to be conclusive, and parol evidence is not admissible to vary its terms. *Kipp v. Laun,* 146 Wis. 591, 131 N. W. 418; *Hannon v. Kelly,* 156 Wis. 509, 146 N. W. 512; *Papenthien v. Coerper,* 184 Wis. 156, 198 N. W. 391. *Hence the contract of the parties must be considered to call for the sale of this stock at 18 or better. Assuming that defendant breached its duty by failure to transmit the stock for sale with proper expedition, the question arises whether at any time after the contract , between plaintiff and defendant there is any ground, further than mere speculation, for concluding that the stock could have been sold for 18 or better.

On November 25th, which was the date of the contract, the stock sold as high as 18½ and closed at 17½, with a low of 17; 500 shares were sold at 18; 100 shares at 18¼, and 100 shares at 18½. It does not appear what quantities of stock were sold at other prices. The Exchange closed at 2 p. m., Milwaukee time. It is undisputed that the closing price of stock on the Exchange refers to the price at which the last sale was made. It is further undisputed that the last sale might have been made in the morning, so that a closing price would in no way indicate that stock reaching the market during the last hour of trading would be sold at that price. It is also conceded by experts on both sides that odd lots of stock, that is, lots of less than 100 shares, are more difficult to dispose of than shares which run in even hundreds, and that odd lots could not be disposed of at 18 until the market reached 18¼. It is also clear that there are no means of knowing what percentage of the sales, if any, were wash sales, that is, colorable sales made merely to stimulate activity in the stock. November 26th was a legal holiday and the Exchange was closed. On November 27th there were no shares as high as 18. On November 28th the stock closed at 18, with 17¾ as low, 300 shares being sold at 18, and there being no evidence as to the vol-

ume of sales at other prices. November 29th was Sunday and the Exchange was closed. On November 30th 100 shares sold at 18, 17½ was the low, and the stock closed at 17¾, but there is no evidence as to the volume of sales at the lower prices. After this date the stock never again sold as high as 18.

The expert who testified for the plaintiff on direct examination stated that had the stock reached the New York Curb before the close of trading on the 25th, there was a reasonable likelihood of its being sold at some price. On cross-examination, however, he stated that without any knowledge as to when the market dropped to 17, when it hit its low mark, and without knowledge as to when it went to 18 and above 18 to its high, and without knowing anything concerning the volume of sales at the lower prices, it would be entirely a matter of speculation as to whether the 140 shares of the plaintiff could have been sold at 18 had they reached New York some time after 9 or 10 o'clock, Milwaukee time. This was also the testimony of the expert for the defendant. After this date only 400 shares of the stock were sold at 18, and the prospects of a sale at this price are at least equally speculative.

We are unable to see how the jury in this case could, except on the basis of pure speculation, conclude that there was any reasonable probability of this stock being sold at 18 at any time after the execution of the contract. In *Application of Gehrke,* 176 Wis. 452, 186 N. W. 1020, where the question was whether damage to plaintiff's lands had resulted from interference with drainage by the construction of a dam, where it also appeared that there was excessive rainfall coincident with the beginning of the construction of the dam, the court said:

"But the unfortunate situation for the petitioners is that coincident with the building of the dam an abnormal rainfall set in which persisted down to the trial of the case; and

while theorists may easily convince themselves that the condition of the lands is due to one or the other of these causes, the real cause cannot be established with any degree of certainty. This case reminds the writer of *Dickson v. Pritchard,* 111 Wis. 310, 87 N. W. 292, in which the court said:
" 'Plaintiffs' case, as to this feature of it, was based entirely upon theory, speculation, and conjecture. It was their misfortune that definite testimony could not be procured. Recoveries cannot be allowed that have no other basis than mere speculation or conjecture. . . . The testimony in this regard is so speculative and conjectural that we are not able to see how, if a verdict had been rendered for the plaintiffs, it should have had any substantial basis to rest upon.' "

This comment seems applicable to the instant case. For the foregoing reasons the judgment must be affirmed.

*By the Court.*—Judgment affirmed.

FRITZ, J., dissents.