McDonald, Respondent, vs. Apple River Power Com-
pany, Appellant.

*November 17—December 5, 1916.*

*Navigable rivers: What are: Mills and milldams: Statute construed.
Hydroelectric plant is "water mill:" Flooding of lands: Taking
for public use: Remedy of landowners.*

1. A river which has never been meandered or declared by the legis-
lature to be a navigable river is not shown to be "navigable"
within the meaning of sec. 3374, Stats., 1898, by the mere fact
that it is so far capable of floating logs as to entitle the public
to a right of way therein for that purpose.
2. A hydroelectric plant used to generate electricity for lighting and
power purposes, etc., is a "water mill" within the meaning of
sec. 3374, Stats.
3. The flooding of lands by the erection and maintenance of a dam
to furnish power for such a plant is a taking of the lands for
a public use, authorized by the milldam law (secs. 3374–3402,
Stats.); and the only remedy of the landowners is that provided
by said law.
4. An action by owners of lands so flooded to abate the dam and re-
cover damages for the flowage need not be dismissed, but, under
sec. 2836b, Stats. 1915, may be treated as an action to obtain
compensation and other appropriate relief under the milldam
law.

Appeal from a judgment of the circuit court for St. Croix
county: George Thompson, Circuit Judge. *Reversed.*

This is an action for the abatement of a dam owned and
operated by the defendant company and to recover the dam-
ages to plaintiff's premises and to his crops thereon caused by
the overflow from such dam.

The defendant has been and now is a corporation existing
under the laws of the state of Wisconsin. Before the incor-
poration of the defendant, F. W. Epley, one of the incor-
porators, obtained authority from the state of Wisconsin for
himself, his successors and assigns to build and maintain a
dam across Apple river upon lands he owned which are de-
scribed in the complaint. The dam was authorized to be

constructed for the purpose of improving Apple river and for the manufacture of flour, feed, and other milling products, and the transmission of electric power, the dam not to raise the water to exceed twenty feet. The dam was constructed in 1903 and in the same year a hydroelectric plant was built at the dam. It is known as "River Dale Dam." The defendant owns another dam, "Somerset Dam," about two and one-half miles from the "River Dale Dam." Both of these dams are used exclusively for the manufacture of electricity. The electric current so manufactured at these two plants is sold to the Consumers Power Company, a foreign corporation, with the exception of a small percentage of such current which is sold to the village of Somerset and the residents thereof for lighting purposes and to the village of Holton. The population of these two villages is less than 1,000 people. The balance of the entire output is sold to the Consumers Power Company, which transmits it by electric line across the state border and sells it in the state of Minnesota for the purpose of supplying light and power to the city of Stillwater and the residents thereof. The city of Stillwater in the state of Minnesota has a population of about 10,000 people. A portion of the electric current is sold by the Consumers Power Company to furnish lights for the Minnesota state penitentiary.

Apple river is located wholly within the state of Wisconsin and is a nonnavigable stream.

The plaintiff is the owner of two tracts of land about two miles up the river from the "River Dale Dam." Plaintiff has been the owner of one of these tracts for more than ten years. Immediately before the commencement of this action he purchased the other tract from William McDonald, who assigned all causes of action then existing in his favor to the plaintiff. The tracts of land are located at an elevation only slightly higher than the surface of the water in the river before the dam was built, and under ordinary conditions this land produces crops of marketable hay.

Before the year 1907 no part of plaintiff's land was flooded or damaged by the defendant's dam, but in 1907 the defendant began the practice of using flash-boards to raise the water in the river over and above the original twenty feet authorized by the act of the legislature.    Two feet of flash-boards, it is found, do not affect plaintiff's land, but the defendant has been using more than two feet of flash-boards, and as a result the plaintiff's land is constantly being flooded and the crops being damaged.    This has occurred annually since 1907, and neither the plaintiff nor his grantor, William McDonald, has in any manner consented to the raising of the dam by means of flash-boards or in any other manner.    Plaintiff alleges that the damages to the crops year after year since 1907 amount to $2,275.    The defendant threatens to continue the use of the full three feet of flash-boards.    The trial court found that the use of these flash-boards is wholly unnecessary to supply any public use that defendant may reasonably be called upon to supply in the state of Wisconsin.

The circuit court entered judgment in favor of the plaintiff awarding him damages in the sum of $2,275, together with his costs and disbursements of this action, and further ordered, adjudged, and decreed that all flash-boards in excess of two feet over and above the original height of the dam be removed therefrom.    From such judgment this appeal is taken.

For the appellant there was a brief by *Brown & Guesmer* and *McNally & Doar,* and oral argument by *Rome G. Brown* and *W. F. McNally.*

For the respondent there was a brief by *Booth & McDonald* and *N. O. Varnum,* and oral argument by *Mr. Frank W. Booth* and *Mr. Varnum.*

SIEBECKER, J.    The court found that the defendant is a Wisconsin corporation and that its articles of incorporation

provide "that the business and purposes of said corporation 'shall be improvement of Apple river, development of power thereon, and transmission of same by means of electricity to New Richmond and other points, and the running and operation of a manufacturing plant or plants, which said business is to be carried on within the state of Wisconsin and especially within the county of St. Croix in said state.' "   It appears, as found by the court, that Epley, one of the incorporators, had been granted authority by the state of Wisconsin "to construct, reconstruct, and maintain a dam across Apple river upon lands owned by himself" in St. Croix county, such grant providing: "said dam to be constructed for the purpose of improving Apple river and for the manufacture of flour, feed and other milling products and the transmission of electric power; provided that the said dam shall not raise the water to exceed twenty feet."   Ch. 185, Laws 1901; ch. 220, Laws 1903.   This defendant became vested with the riparian rights appurtenant to the lands where the dam is located and constructed the dam in 1903 at the height authorized.   It also appears that the defendant after 1907 has operated the dam with three feet of flash-boards above the authorized height of the dam.   The court found as a fact that Apple river is wholly located within the state of Wisconsin, and that it is a nonnavigable river within the meaning of the Wisconsin milldam act (ch. 146, Stats.).   These facts are practically free from controversy.   The parties radically conflict in their claims as to the rights of defendant in operating this dam and as to its authority to raise the water in excess of the twenty feet authorized by the grant to Epley, if such excess causes flooding of lands not affected by the twenty-foot dam.

The milldam act prior to 1911 (sec. 3374, Stats. 1898) provided: "Any person may erect and maintain a water mill and a dam to raise water for working it upon and across any stream that is not navigable upon the terms and conditions and subject to the regulations hereinafter expressed."

Since the dam in question was constructed in 1903, the rights of the parties became fixed before the 1911 amendment. *Water Power Cases,* 148 Wis. 124, 134 N. W. 330. As above indicated, the trial court found that this dam was erected in a nonnavigable stream within this state. This conclusion is well established by the facts of the case. The question of the test of navigability of streams within the milldam act was fully considered and elaborated in the case of *Allaby v. Mauston E. S. Co.* 135 Wis. 345, 116 N. W. 4. It is there declared that, "In view of the extent to which this court has gone in declaring streams navigable in the sense that they are *public highways,* it is obvious that the word was used in this statute [milldam act] in a very different signification. Its object was to enable the utilization of water power upon many of the important streams of the state." It was there held that the fact that a stream was capable of floating logs, thus entitling the public to a *right of way* therein for such a purpose, did not suffice to show its navigability in the sense of sec. 3374, Stats. Apple river has not been meandered nor declared to be a navigable river by the legislature of the state.

The defendant maintains and operates a hydroelectric plant. The trial court determined that defendant's plant constituted a "water mill and dam" within the sense these terms are used in the milldam law. The word "mill" as defined in the case of *Home Mut. Ins. Co. v. Roe,* 71 Wis. 33, 36 N. W. 594, was considered applicable to its use in this law. It is there said:

"A 'mill' is defined to be '(1) An engine or machine for grinding or comminuting any substance; . . . usually having a word prefixed, denoting the particular object to which it is applied. . . . (2) The building, with its machinery, where grinding or *some process of manufacturing is carried on.*' Webster. 'The original purpose of mills was to comminute grain for food, but the word "mill" is extended to engines or machines moved by water, wind, or steam, for carrying on many other operations.' Imperial."

In *McMillan v. Noyes,* 75 N. H. 258, 72 Atl. 759, the question arose whether a hydroelectric plant was a water mill within the meaning of the milldam act of that state, which had in its provisions the features that are in the act of this state. The court there declared:

"But it is said that the power company does not bring itself within the terms of the statute because it is not maintaining 'a water mill' in connection with its dam. That it has erected a building and installed the necessary machinery for the conversion of the water power secured by its dam into electric power is conceded. The machinery is run by water power, and in the ordinary use of language the establishment might be termed a water mill; that is, a mill operated by water power. That the mill in question falls within the literal meaning of the statute is evident."

The decisions in this court, so far as this question has been considered, are in harmony with the meaning the New Hampshire court gave to the words "water mill" as used in the statutes on the subject. In the *Allaby Case* [*Allaby v. Mauston E. S. Co.* 135 Wis. 345, 116 N. W. 4] it appeared that the power from the dam there in litigation was used to manufacture electricity which was sold to operate a street railway system and to operate a grist mill. It was there determined that the dam was one within the milldam law. We are persuaded that the term "water mill" as used in sec. 3374, Stats., properly includes various kinds of mills operated by water power, and that a hydroelectric plant generating electricity for the manifold uses to which it is applied in modern mechanical, industrial, commercial, and scientific enterprises is a water mill within the meaning of the milldam act. The operation of this dam and the electric plant connected therewith for generating electric energy and distributing it for light, heat, and power purposes has grown to be as much of a necessity to meet the varying demands of the people as the furnishing of hydraulic power in former times for operating grist and other kinds of mills. The erection and maintenance of dams to furnish power for such electri-

cal purposes and the consequent flooding of land by setting
back and storing the water of streams is a devotion of such
lands to a purpose as public in its nature and character as the
use of land in the past for storing water to operate the kind
of mills which have been approved as being within the con-
templation of the milldam act.    The defendant is authorized,
as successor to Epley, to construct and maintain this dam
"for the purpose of improving Apple river and for the manu-
facture of flour, feed and other milling products and the
transmission of electric power."    The actual operation of
this dam is in accord with this grant, which in legislative con-
templation was evidently deemed to be within the provisions
of the milldam act.    It follows that defendant has the right
to acquire the flowage rights conferred by the provisions of
secs. 3374 to 3402.

"These statutes are grounded in the theory, confirmed by
the courts, that there is a public interest in the utilization of
the water powers of the state to run mills sufficient to justify
the exercise of the power of eminent domain in the flooding
and consequent taking of lands of individuals.    (Citing Wis-
consin cases.)    Hence that the statute is effective to render
lawful the building, the maintenance, and the raising of a
milldam as against the individual who suffers merely a flood-
ing and taking of his land.    A dam so authorized which does
no other damage is therefore not *per se* a nuisance, either pri-
vate or public.    (Citing.)    The statute provides a remedy
for all such damage, which, by most unambiguous language, it
makes exclusive of all others, and to it the courts have there-
fore uniformly accorded that effect. . . . The utmost right
of the individual whose land is flooded or damaged is to seek
compensation upon the theory of the continuance of the dam.
(Citing.)"    *Allaby v. Mauston E. S. Co.* 135 Wis. 345, 351,
352, 116 N. W. 4.

It necessarily follows that the plaintiff must seek his rem-
edy pursuant to the provisions of the statutes embodied in
ch. 146, Stats., pertaining to mills and milldams.    It was
error to entertain the action as one in equity to abate a part

of the flash-boards used as a part of the dam, and hence the judgment must be reversed. The action, however, need not necessarily be dismissed. Ch. 219, Laws 1915 (sec. 2836b, Stats. 1915). The action may be treated as a civil action under the statutes, secs. 3374–3402, Stats., for trial before a jury to ascertain the defendant's liability, if any, to plaintiff for the alleged flooding of plaintiff's lands and to try any other appropriate issue as provided in these statutes. *Allaby v. Mauston E. S. Co., supra.*

*By the Court.*—The judgment appealed from is reversed, and the cause remanded to the circuit court for further proceedings according to law.