WELLS and others, Respondents, vs. WISCONSIN RIVER POWER COMPANY, Appellant.

*April 3—April 30, 1918.*

*Mills and milldams: Eminent domain: Compensation for lands made unfit for agriculture: Statutes construed: "Injure."*

1. Under ch. 189, Laws 1907, granting power to build and maintain a dam across the Wisconsin river at Prairie du Sac, the licensees must make compensation for the injury to lands which are made permanently unfit for agricultural purposes by the backing up of the water, as well as for lands which are actually overflowed.
2. The word "injure" in sec. 2, ch. 189, Laws 1907, and in sec. 1777e, Stats. 1898, should not be construed in its technical legal sense, as referring merely to an actionable wrong, but rather in the popular and usual sense, as applying to any damage inflicted.

APPEAL from an order of the circuit court for Columbia county: CHESTER A. FOWLER, Circuit Judge.    *Affirmed.*

This is a condemnation proceeding brought by owners of land bordering on the Wisconsin river who claim that their lands are flowed or permanently injured by reason of the erection and maintenance of a dam at Prairie du Sac by the appellant, the *Wisconsin River Power Company.*    The appellant admitted the flowing of certain of the lands, but denied that it had flowed the remainder.    Upon the hearing

of the petition the court found that certain of the lands were permanently flooded (and no contention is now made against that finding), also that the remaining parcel of the lands was "permanently injured and its use for agricultural purposes practically destroyed by reason of the stoppage and interference with the underground drainage" thereof by the erection and maintenance of the dam, and commissioners were appointed to assess compensation not only for the lands actually flowed but for the damage to the lands not actually flowed but permanently injured for agricultural purposes. The *Power Company* appeals from the order because it includes among the lands to be appraised the last named lands.

For the appellant there was a brief by *Jones & Schubring,* and oral argument by *E. J. B. Schubring* and *Arnold Peterson,* all of Madison.

For the respondents there was a brief by *Grotophorst, Thomas, Rieser & Quale* of Baraboo, and oral argument by *H. H. Thomas.*

WINSLOW, C. J.    The question in the case is whether the *Power Company* must make compensation for the injury to lands which are made permanently unfit for agricultural purposes by the backing up of water by its dam as well as for lands which are actually overflowed.

This depends on the legislation under which the *Power Company* is acting, and an examination of that legislation clearly shows, we think, that the question must be affirmatively answered.

The *Power Company* obtains its authority to maintain the dam by virtue of a grant of power made to certain persons (of whom the company is the assignee) by ch. 189, Laws 1907. This act evidently contemplates that the licensees shall make compensation for injuries to lands not flowed as well as for lands actually flowed.

By sec. 2 of the act it is declared that "In case it shall be necessary to take, flow *or injure*" any lands or property for

the purpose of the construction or use of the dam the licensees shall be subject to the provisions and entitled to all the benefits and remedies of ch. 146, Stats. 1898 (the milldam act). By sec. 3 of the act it is further provided that "for acquiring the necessary lands or rights, easements or privileges in lands" necessary for the complete and successful construction of the dam and improvement of navigation, the said licensees may enjoy the rights granted to corporations by secs. 1777 to 1777e inclusive, Stats. 1898, and the amendments thereto.

Turning to the statutes last named we find that they have to do with log-driving corporations, which are authorized to improve streams with flooding dams, booms, etc., and are given powers of condemnation for that purpose. The most significant of the sections referred to is sec. 1777e, in which it is provided that such corporations may acquire title to necessary lands or easements by purchase or lease or by eminent domain, "and in case it shall be necessary to take, flow *or injure* lands and property in the construction of the works . . . such lands and property or easements therein may be acquired" in the manner prescribed by the statutes with reference to condemnation by railroads.

In our judgment the word "injure" in this statute as well as in the statute licensing the construction of the dam was intentionally inserted and was not intended to be construed in its technical legal sense, *i. e.* an actionable wrong, but rather in the popular and usual sense, namely, an act resulting in damage. If the word were to be construed in its strict technical sense the insertion of it in the statute would accomplish little, if anything; construed in the usual sense, however, it becomes a reasonable and just provision requiring the licensees to make compensation for all damage inflicted by their enterprise.

If authority be necessary to support this reasoning it may be found in *U. S. v. Alexander,* 148 U. S. 186, 13 Sup. Ct. 529, and the cases therein collated.

The case of *Huber v. Merkel,* 117 Wis. 355, 94 N. W. 354, which touches upon the right of a property owner to sink wells on his own land and allow the water to run away, although the flow of water in an adjoining owner's well is thereby diminished, has no application here.   In authorizing the erection of this dam the state could impose such terms as it chose, and the licensees must conform to them.   They have no other rights save those which the legislature gives them.

*By the Court.*—Order affirmed.

Rosenberry, J., took no part.