# CASES DETERMINED

# January Term, 1926.

---

TOWN OF DEKORRA, Respondent, vs. WISCONSIN RIVER POWER COMPANY, Appellant.

*September 21, 1925—January 12, 1926.*

*Highways: Town boards: Power to settle for damages to highway: Validity of contract of settlement.*

1. Under sub. (1), sec. 60.29, Stats., giving to town boards charge of all town affairs not by law committed to other officers, and sec. 81.01, placing the care and supervision of town highways in such board, it has power, in the absence of a statute to the contrary, to adjust damages to highways. p. 505.
2. Where a dam constructed by a power company under ch. 189 of the Laws of 1907 caused the flooding of a portion of a town road, an agreement between the power company and the town board pursuant to which the power company constructed a new causeway above high-water mark according to specifications furnished by the town and acceptable to it, is valid and a discharge of the company from further liability. p. 507.
3. Specific duties having been intrusted to towns and made obligatory on them, it must be assumed that the legislature intended to give them ample authority to carry out those duties. p. 506.
4. When contracts of municipalities are not *ultra vires* they are bound by them even if not advantageous. p. 507.

APPEAL from a judgment of the circuit court for Columbia county: CHESTER A. FOWLER, Circuit Judge. *Reversed.*

Action to require defendant to restore plaintiff's highway, damaged by flooding by defendant's dam, and for an injunc-

tion restraining defendant from further damaging said highway.

The facts sufficiently appear from the findings of the trial court, which with slight omissions and the correction of a date were as follows:

"(1) The defendant, pursuant to ch. 189, Laws of 1907, erected a dam across the Wisconsin river at Prairie du Sac for the purpose, as declared in the act, 'to improve the navigation of the Wisconsin river, . . . and for the purpose of creating hydraulic power.' . . .

"(2) The said ch. 189 provided that the grantee of the franchise to erect the dam should be 'subject to all of the provisions, remedies and liabilities in that behalf, and entitled to all the benefits, privileges, remedies and provisions of ch. 146 of the Statutes of 1898,' known as the Milldam Act.

"(3) The dam was constructed by the defendant at the height prescribed by said ch. 189, and on completion thereof and the shutting of its gates the water was set back so as to flood and destroy portions of two certain roads in the defendant town.

"(4) It was at the time agreed between the said town and the defendant company that the town would vacate the flooded portions of said roads and lay out a new road connecting the unaffected portions, and that the company on the line of the new road would construct a causeway or turnpike above high-water mark, riprap the sides with four inches of stone, and construct a concrete bridge at a point where an existing creek crossed the line of the causeway; which said agreement was carried out fully and the work of the company in that behalf was accepted by the town.

"(5) After such acceptance the water on the river side of said causeway kept continually encroaching on and eating into the side of the roadway and up and into the traveled track thereof. The town repaired the same and demanded of the company that it repay them their expenditures and keep the causeway perpetually in repair, which demand the company refused. The said contract did not contain any provision for maintenance of the road. The controversy between the parties was *bona fide*. Negotiations were en-

tered into between the town board and defendant wherein in settlement of their differences it was in terms agreed that, in satisfaction of the town's claim for payment of disbursements already made by the town for repairs to the highway and a release from the town to the company of the town's claim of the company's responsibility to repair injuries to the highway done by the dammed water and for damages for such injuries, the company would pay the town $2,150. Said sum was paid by defendant pursuant to said agreement and received into the town treasury. Said agreement was signed by the town board October 18, 1920. The town meeting did not by any motion or resolution ever ratify said agreement or attempt to do so. The electors of the town were generally apprised of the making of said agreement and the receipt of said money.

"(6) The dammed water has since March 31st continued its action and encroachments on said causeway and has caused the sides thereof to wash away so as to make the same unfit for travel, and the town in maintaining said highway in condition safe and suitable for travel has expended a total sum of $2,359. Of said sum $375 was expended in graveling the surface of the road. No surfacing was required by the original contract. The hauling of dirt to repair the washouts made by the dammed water so cut into and rutted the roads as to make the hauling of part loads necessary unless the surface was graveled, and the expense of graveling the surface was considered by the town authorities and was less than the difference between the cost of repairs without and with graveling.

"(7) The said causeway is now washed out in places at its sides, an abutment of the bridge is sunken and cracked, and the adjacent wing has partly fallen down, all of which conditions were caused by the dammed waters. The water will continue its encroachments and injuries to the highway unless the same be adequately protected, and the cost of such adequate protection will exceed $10,000. Reasonable safety requires that said existing injuries be repaired."

The defendant demurred to the complaint, which embodied the facts substantially as above set out, but the demurrer was overruled and the case was tried.

As conclusions of law the court found:

"The contract whereby it was agreed between the town board and the defendant that the town would vacate certain existing highways and lay out a new one to take their place and that the company would construct a causeway and bridge on the line of the road so laid out was a valid contract.

"(2) The company was obligated under the contract and the statute authorizing the dam and the law to prevent the dammed waters from encroaching upon or materially injuring the said new road or the said bridge.

"(3) The contract, by the terms of which the company agreed to pay the town $2,150 in satisfaction of claim for past and future injury to the road and the town released the company from liability for all such injuries, was invalid as beyond the power of the town board to make or the town meeting to ratify.

"(4) The town, on paying into court for the benefit of the defendant the portion of the fund paid to the town by the defendant not yet expended in repairing the injuries to the highway done by the dammed water, less the defendant's costs as taxed, will be entitled to an injunction enjoining the defendant from encroaching upon the said highway or materially injuring the same or said bridge by the dammed waters, and to that end commanding the defendant to restore the said highway to its original condition or a condition equally safe, substantial, and permanent."

From a judgment entered accordingly the defendant appealed.

For the appellant there was a brief by *Schubring, Ryan, Clarke & Petersen* of Madison, and oral argument by *William Ryan*.

For the respondent there was a brief by *Olin & Butler*, attorneys, and *R. M. Rieser* and *C. G. Mathys*, of counsel, all of Madison, and oral argument by *Mr. Rieser* and *Mr. Mathys*.

The following opinion was filed October 20, 1925:

VINJE, C. J. The defendant contends (1) that the legislative act authorizing the construction of the dam relieves

it from paying damages for the flowage of town highways; (2) that the agreement and performance thereof by it to construct the highway laid out by the town in place of the one destroyed discharged it from liability to respond in damages; and (3) that its last agreement and payment of $2,150 in full for present and future damages was valid and conclusive upon all parties.

Since the court has reached the conclusion that the second contention of the defendant is well taken, it becomes unnecessary to determine the soundness of the first and third contentions, and we express no opinion relative thereto.

The statute imposes a duty upon towns to keep their highways in a reasonably safe condition for travel, and if they fail to do so they must respond in damages if an injury occurs by reason of their insufficiency. Sec. 81.15, Stats. And it places the duty upon town boards to see that the highways are built and maintained in a reasonably safe condition. Sec. 81.01 says: "The town boards shall have the care and supervision of all highways and bridges in their respective towns, except as otherwise provided." And sub. (1), sec. 60.29, provides that town boards shall "have charge of all the affairs of the town not by law committed to other officers." A careful search of the statutes has failed to reveal any power to settle or adjust damages to town highways to be given to any other town officer or officers or to the town meeting. The power, therefore, to lay out, build, and maintain town highways is lodged in the town board, and in the absence of a statutory direction to the contrary it must be held that the power to adjust damages to them is also lodged in the town board. This must follow from the statutory duty to maintain them and the statutory declaration that they shall have the care and supervision of them. Even in the absence of such statutory provisions sec. 60.29 would be a sufficient warrant for so holding. Thus in Minnesota, having a statute similar to our sec. 60.29, it was held that the town board had the authority to buy a safe for the keeping of the books and papers of

the town. *State Bank v. Goodland,* 109 Minn. 28, 122 N. W. 468.

It is true, as argued by respondent, that towns are municipal corporations of limited powers. But when specific duties are intrusted to them and made obligatory on their part, it must be assumed that it was the legislative intent to give them ample authority to carry out those duties. So when they were charged with the duty of maintaining their highways and the town boards were selected to discharge this duty, it must be held, in the absence of any statutory provision, that they were given plenary power to do all that was reasonably necessary to carry out the legislative scheme. The power to contract with reference to a highway comes clearly within such scheme. The duty to maintain a highway implies the power to enter into contracts with reference to its maintenance, and that includes the power to settle for damages done to it. Such power was assumed or at least intimated to exist in the case of *Levis v. Black River Imp. Co.* 105 Wis. 391, 81 N. W. 669. And in *Washburn Co. v. Thompson,* 99 Wis. 585, 75 N. W. 309, it was held that a county board had authority to compromise a debt due it where it was of questionable validity, and that the doctrine of *Butternut v. O'Malley,* 50 Wis. 329, 7 N. W. 246, holding that a town board could not lawfully accept less than the full amount of a judgment in favor of the town, had no application to the situation in the *Washburn County Case.*

In the instant case the question as to what would make the town whole for the damage caused by the flowage of the dam was one of judgment. It was not susceptible of an absolutely correct mathematical measurement. The town board came to the conclusion that a substituted highway would best reimburse the town. At least at the time such conclusion was reached and for a long time thereafter no one questioned its wisdom, and no one now questions the good faith of the town board in entering into the agreement for a substituted highway.

When contracts of municipalities are not *ultra vires* they are bound by them even if not advantageous. *Eau Claire Dells Imp. Co. v. Eau Claire,* 172 Wis. 240, 179 N. W. 2; *West Bend v. West Bend H. & L. Co.* 186 Wis. 184, 202 N. W. 350. This fact should constantly be borne in mind by public officials, and they should enter into contracts with the same care and prudence that private parties do, and with the idea that contracts entered into will be carried out. If one party is bound by a contract the other must be, and neither private individuals nor public bodies should indulge the thought that the contract will be insisted upon if it turns out to be advantageous, but repudiated if it turns out to be disadvantageous. It is to be hoped that we have reached an age when municipal and national integrity stand upon a parity with individual integrity.

There is no force in the contention of the town that the agreement in question in any manner affects the power of the town to fully discharge its public functions in the future. The duty to maintain its highways rested upon the town before the agreement was made, and it rested there after it was made. All that was effected by the agreement was that another route was selected by the town over which the defendant built a road according to specifications furnished by the town and acceptable to it. The compliance with that agreement on the part of the defendant extinguished any liability it may have been under to restore the town's highway. What it paid later was a mere gratuity. If any duty rested upon it under its charter, that duty was discharged when it furnished the town with a substitute highway of its own choosing and satisfactory to the town. No duty to continue to maintain the highway rested upon defendant as long as it did not use its dam in an unauthorized manner, and there is no claim that it has been maintained at a higher level or used in a manner not authorized by its charter. That being so, a court of equity cannot by injunction or otherwise restrict the legislative grant.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint upon the merits.

A motion for a rehearing was denied, with $25 costs, on January 12, 1926.