GOGEBIC NATIONAL BANK *v.* TOWNSHIP OF IRONWOOD.

1. Highways—Powers of Township Board to Contract.
   A township board had the right to contract with reference to allowance for removal of loose rock under a contract for building a highway, in addition to the contract price, where the form of the bid was not prescribed, and it was apparent that rock formation would be encountered, but the amount thereof was uncertain.

2. Same—Compromise and Settlement—Order Issued in Settlement of Claim Valid.
   Where a township board, without undue influence or fraud, and under no mistake of fact, after several conferences had been had, made a settlement in full of a highway contractor's claim, and issued an order therefor, said settlement may not be attacked in an action on said order.

Error to Gogebic; Driscoll (George O.), J.  Submitted April 21, 1927.  (Docket No. 135.)  Decided June 6, 1927.  Rehearing denied July 29, 1927.

Assumpsit by the Gogebic National Bank against the township of Ironwood for the amount of certain orders.  Judgment for plaintiff on a directed verdict.  Defendant brings error.  Affirmed.

*Harry K. Bay* (*Van Slyck & Bay*, of counsel), for appellant.

*Charles M. Humphrey* and *Ivan D. Wright*, for appellee.

Sharpe, C. J.  On December 5, 1921, the township board of Ironwood, in the county of Gogebic, by resolution, decided to build one and one-half miles of road in that township, and to make application for a

--------

¹Highways, 29 C. J. § 309; ²Id.

State reward therefor. Blue prints, profiles, and plans and specifications were prepared by the engineer employed by the county road commission, forwarded to the State highway department, and approved by it. Bids for the construction were asked for by advertisement, and that of Leander Jacobson, the lowest bidder, accepted. He failed to furnish the bond required, and on April 4, 1922, the contract was let to Fitzpatrick Brothers, the next lowest bidder. It provided that the work should be done "in strict conformity with the specifications hereto attached and with the plans therefor, prepared by the county highway engineer." A fixed price for earth and rock excavation, for gravel surface, for concrete and for loose rock was agreed upon. The contractors began work soon thereafter, and completed the job on November 6, 1922. Orders in payment were issued from time to time; one for $6,000 on October 2, 1922. Dispute arising as to the amount due on completion of the work, several conferences were held, resulting in a settlement being reached on November 6, 1922, at a meeting of the township board and the highway commissioner and the contractors, wherein, as appears by the minutes of the meeting, the board released the contractors and they accepted an order for $7,657 in final settlement of the amount due them.

The $6,000 order was purchased by the plaintiff on October 13, 1922. The order last issued was left with it for collection. At the annual township meeting, held on April 2, 1923, plaintiff's cashier presented the two orders. It appears that he was assured by the board and the electors present that the orders were valid and would be paid. The minutes of the meeting contain no reference to these orders, but show that a tax of $15,000 was voted for highway improvement purposes. Interest was paid on the orders, as provided for therein, up to July 2, 1923. On July 12,

1923, the order for $7,657 was purchased by the plaintiff from the contractors.

No further payments having been made, the plaintiff brought this action on July 6, 1925, against the township to recover therefor. At the conclusion of the proofs, both parties moved for a directed verdict. The motion of plaintiff was granted, and verdict rendered for $16,169.11, the amount of the two orders and interest. Defendant reviews the judgment entered thereon by writ of error. Many errors are relied on. They may all be disposed of in considering that assigned on the direction of a verdict.

Defendant insists that, included in these orders, was an allowance for loose rock to which the contractors were not entitled. The advertisement asked for sealed proposals for "grading and shaping the road, constructing or placing necessary drainage structures and surfacing with gravel," according to the plans and specifications. The form of the bid was not prescribed. It was apparent to all bidders that rock formation would be encountered. The amount thereof could not be estimated. All of the bids included excavation, gravel, concrete, and solid rock. Fitzpatrick Brothers' bid also included loose rock. It appears that the other bidders took into consideration the probability that loose rock must be moved, and increased their charge for excavation to include it. The amount thereof being problematical, we think the bidders were justified in submitting a charge for removing it as well as for excavation and solid rock. An expert engineer, called by defendant, defined loose rock as "boulders less than half a cubic yard in size and over one cubic foot in size; detached masses of rock." The contract as entered into provides for the payment of $2 per cubic foot for removing loose rock. We think the board had a right to contract with reference to it. The engineer in the employ of the county road commission, who acted as an inspector on the jobs for a

part of the time, claims that he made no estimate of the amount of loose rock removed; that he had not been furnished with a copy of the contract, and did not know that this provision was in it.    It appears, however, that in the statements furnished the local State reward clerk such items were included and the amount of the State reward based thereon.    When the contract was completed and a settlement was attempted, the allowance for loose rock became the bone of contention.    The contractors made claim for the removal of a specific number of cubic yards thereof. The board advised with the county engineer and with a competent road builder, a member of the board, who had under its employment acted as an inspector during a part of the time, and finally agreed with the contractors to issue to them an order for $7,657 in full settlement of their claim.    This was less than they claimed, but they accepted it and the order was issued and delivered to them.

The question presented was not a legal one.    If now submitted to a jury, it would be its duty to determine how many cubic yards of loose rock were removed.

No claim is made that the members of the board were in any way unduly influenced in reaching this settlement.    They were apparently men of probity and honor, and acted in what they believed to be the best interests of their township.    No fraud is charged, and certainly none is proven.    Nor can it be claimed that the order was issued under a mistake of fact.    A settlement thus made cannot afterwards be attacked. In *Advertiser & Tribune Co.* v. *City of Detroit*, 43 Mich. 116, 119, it was said:

"Where power is given to the common council of a city to audit and allow all accounts chargeable against it, the law presumes that they will investigate all claims presented, and it is clearly their duty so to do. They cannot formally allow claims without any investigation or effort to investigate, and afterwards order

an investigation and rescind their action and recover back moneys paid, because of facts existing but not known at the time the account was allowed, and which a proper examination would then have brought to their attention. Such a doctrine would be productive of endless mischief and litigation."

See, also, *Township of Churchill* v. *Township of Cummings,* 51 Mich. 446; *Feily* v. *Campground Ass'n,* 210 Mich. 197; *Town of Dekorra* v. *Wisconsin River Power Co.,* 188 Wis. 501 (205 N. W. 423); 2 Dillon on Municipal Corporations (5th Ed.), §§ 821, 822.

Many other interesting questions are discussed by counsel, but, in view of the conclusion reached, it is unnecessary to consider them. On the undisputed proof, the verdict was properly directed.

The judgment is affirmed, with costs to appellee.

BIRD, SNOW, STEERE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.